UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUANA MAMISAY**,<br>　　　　Plaintiff,<br>　　v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.**,<br>　　　　Defendants. | Case No.  16-cv-05684-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 21, 27, 28, 40, 46, 48 |
| **TROUT**,<br>　　　　Plaintiff,<br>　　v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.**,<br>　　　　Defendants. | Case No.  16-cv-05698-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 26, 36, 37, 46, 50 |
| **KING**,<br>　　　　Plaintiff,<br>　　v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.**,<br>　　　　Defendants. | Case No.  16-cv-05711-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 31, 45, 55, 56, 57, 58 |
| **GATCHALIAN**,<br>　　　　Plaintiff,<br>　　v.<br>**EQUIFAX, INC., ET AL.**,<br>　　　　Defendants. | Case No.  16-cv-06334-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

|  |  |
|---|---|
| **PETRIE**,<br>　　　　　Plaintiff,<br>　　v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.**,<br>　　　　　Defendants. | Case No. 16-cv-06348-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 30, 32, 34 |
| **ETHRIDGE**,<br>　　　　　Plaintiff,<br>　　v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.**,<br>　　　　　Defendants. | Case No. 16-cv-06360-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 20, 23, 24 |

　　　　The above-captioned cases constitute a fraction of approximately 170 nearly identical cases filed in this District over the past year pursuant to (1) the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and (2) the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a).[1] In summary, the law firm that filed all the cases asserts claims based on the following factual scenario: each plaintiff filed for Chapter 13 bankruptcy protection, whereupon a bankruptcy court confirmed a financial reorganization plan. Thereafter, each plaintiff asserts that they ordered credit reports which showed effectively "inaccurate, misleading, or incomplete" information for accounts that were included in their confirmed bankruptcy plans. Despite each plaintiff notifying the credit reporting agencies of the alleged inaccuracy, they assert that their credit reports continued to show the inaccurate account information. The lawsuits followed. Plaintiffs concede that the gravamen of each complaint remains constant, albeit each contains specific allegations outlining the alleged "inaccurate,

---

[1] *See* Experian Mot. to Consolidate, *Mamisay v. Experian Info. Sols.*, 4:16-cv-5684, Dkt. No. 45, at 3.

2

misleading, or incomplete" account information. Further, plaintiffs agree that these differences do not impact the legal issue at hand, namely whether the FCRA and CCRAA prohibit defendants from reporting historically accurate information about delinquent accounts—such as the account's outstanding balance—*after* a Chapter 13 bankruptcy plan is confirmed, *but before* the debt has been discharged.

For the reasons set forth below, and as a matter of law, the Court finds the alleged reporting at issue does not violate the FCRA or CCRAA. Accordingly, the Court **GRANTS** defendants' motions to dismiss in each of the above-captioned cases and **DISMISSES** the complaints.[2] Given the unique status of these cases—and because the Court is skeptical that any amendment will prove useful—the Court will allow further briefing on whether the dismissal should be with prejudice so that plaintiffs may proceed directly to appeal.

**I.   LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere

---

[2] The Court also **GRANTS** the unopposed Requests for Judicial Notice in *Mamisay v. Experian Info. Sols.*, 4:16-cv-5684, Dkt. No. 28; *Trout, v. Experian Info. Sols.*, 4:16-cv-5698, Dkt. No. 37; and *King v. Experian Info. Sols.*, 4:16-cv-5711, Dkt. No. 56. These documents are court filings and other matters of public record, and are therefore the proper subjects of judicial notice. *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding the court "may take judicial notice of court filings and other matters of public record").

3

possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## II.   DISCUSSION

As noted above, plaintiffs allege FCRA and/or CCRAA claims against defendants. Prior to addressing the merits of plaintiffs' claims, however, defendants argue that plaintiffs do not have standing to bring their claims pursuant to *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (*See* TD Bank Mot., *King v. Experian Info. Sols.*, 4:16-cv-5711, Dkt. No. 57, at 4–7.) Thus, the Court first addresses the threshold issue of Article III standing, before turning to plaintiffs' underlying claims.

### A.   Article III Standing

In order to establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. The first prong, injury in fact, requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548. In the context of a statutory violation, a plaintiff cannot simply "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. Rather, the injury "must actually exist." *Id.* at 1548.

Although an injury must be "concrete," however, it need not be "tangible." *Id.* at 1549. Even the "risk of real harm [may] satisfy the requirement of concreteness." *Id.* Further, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* For example, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

Here, defendants argue that plaintiffs have failed to satisfy the injury-in-fact requirements of Article III under *Spokeo* because their complaints do not disclose an actual injury resulting from the alleged FCRA violations. The Court disagrees. "[T]he purpose of the FCRA . . . is 'to protect

4

consumers from the transmission of inaccurate information about them.'" *Carvalho, v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). By providing a private cause of action for violations of section 1681s-2(b), "Congress has recognized the harm such violations cause, thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'" *Syed v. M-I, LLC*, 846 F.3d 1034, 1040 (9th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549).

In *Spokeo,* the Court held that the reporting of an incorrect zip code could not confer Article III standing. 136 S. Ct. at 1549-50. By contrast, plaintiffs allege here that the injury stems from defendants' inaccurate reporting of debts and debt delinquency. This inaccurate reporting of debt constitutes the precise harm Congress sought to protect against in enacting the FCRA, and thus, cannot be classified as a "mere procedural violation." *See Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017) (finding that plaintiffs have Article III standing under *Spokeo* when alleging FCRA violations for inaccurate reporting); *Keller v. Experian Info. Sols., Inc.*, No. 16-CV-04643-LHK, 2017 WL 130285, at *4 (N.D. Cal. Jan. 13, 2017) (same).

Accordingly, assuming that the defendants' reporting of plaintiffs' debt was in fact inaccurate, the Court finds that plaintiffs have alleged a sufficiently "concrete" injury for purposes of Article III standing. *Spokeo*, 136 S. Ct. at 1549-50. The Court therefore turns to address whether defendants' reporting of plaintiffs' debts was inaccurate under the FCRA.

**B.   FCRA**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To achieve these goals, the FCRA imposes duties on both credit reporting agencies ("CRAs") and "on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Id.*

The obligations of CRAs and furnishers are described in 15 U.S.C. §§ 1681i and 1681s-2(b), respectively. Pursuant thereto, CRAs must conduct a reasonable "reinvestigation" of reported

credit information if a consumer disputes the contents of the report. 15 U.S.C. § 1681i(a)(1)(A). Additionally, a CRA is required to "provide notification of the dispute to any person who provided any item of information in dispute" so that the furnisher may conduct its own investigation as required by § 1681s-2(b). *See* § 1681i(a)(2)(A).

By contrast, furnishers who receive notice from a CRA that a consumer disputes any item of information must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . .
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). The FCRA then creates a private right of action for willful or negligent noncompliance with either section 1681i or 1681s-2(b). *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681n, o).[3]

### 1. Plaintiffs Fail to Allege an "Actual Inaccuracy"

To state a claim under the FCRA, a plaintiff must first show "that an actual inaccuracy exist[s]." *Keller*, 2017 WL 130285, at *5 (citing *Carvalho*, 629 F.3d at 890); *see also Hernandez*

---

[3] Plaintiffs allege that their FCRA claim, Count I, is brought for violations of section 1681s-2(b), which, as noted above, describes the obligations of furnishers, not CRAs. Nonetheless, plaintiffs then allege violations of section 1681i against the CRA defendants under Count I. Thus, the Court considers Count I as brought against both furnisher and CRA defendants for violations of sections 1681s-2(b) *and* 1681i.

6

*v. Wells Fargo Home Mortg.*, No. 2:14-CV-1500 JCM, 2015 WL 1204985, at *2-3 (D. Nev. Mar. 16, 2015) (holding that an actual inaccuracy must exist to state a claim under section 1681s-2(b)); *Mortimer v. JP Morgan Chase Bank, N.A.*, No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) (same). Thus, "even if a furnisher or CRA fails to conduct a reasonable investigation or otherwise fails to fulfill its obligations under the FCRA, if a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's 'claims fail as a matter of law.'" *Keller*, 2017 WL 130285, at *5 (quoting *Carvalho*, 629 F.3d at 890). Further, a complaint's allegations must dispute *facts* underlying a purported inaccuracy, as the presentation of *legal defenses* to payment will not suffice. *Artus*, 2017 WL 346022, at *3 ("[J]ust as in suits against CRAs [under § 1681i], a plaintiff's required showing [under § 1681s-2(b)] is factual inaccuracy, rather than the existence of disputed legal questions" because "[l]ike CRAs, furnishers are neither qualified nor obligated to resolve matters that turn[] on questions that can only be resolved by a court of law." (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).

    a. Effect of Confirmed Bankruptcy Plan on Historically Accurate Reports

Here, defendants argue that plaintiffs' allegations fail to state a plausible FCRA claim because the reporting of owed or missed payments during the pendency of a bankruptcy proceeding, and prior to discharge, does not constitute an "actual inaccuracy" under the FCRA. With respect to this precise issue, judges in this District have now repeatedly and unanimously rejected plaintiffs' legal arguments to the contrary. *See, e.g.*, *Artus*, 2017 WL 346022, at *4 (Davila, J.) (dismissing FCRA claim "because Plaintiff has not plausibly alleged . . . that the balance owed or past-due designation is inaccurate or misleading because it somehow fails to account for her confirmed reorganization plan"); *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *4-7 (N.D. Cal. Jan 20, 2017) (Koh, J.) ("[E]ven if Plaintiff is correct that Plaintiff's credit report did not reflect the terms of Plaintiff's Chapter 13 bankruptcy plan, this would not be an inaccurate or misleading statement that could sustain a FCRA claim . . . ."); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-CV-03645-EMC, 2016 WL 631980, at *3 (N.D. Cal. Feb. 17, 2016) (Chen, J.) ("[T]he mere fact of bankruptcy proceedings does not impact the

7

validity of a debt, only its potential enforceability."); *Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB, 2013 WL 1663335, at *5-6 (N.D. Cal. Apr. 17, 2013) (Beeler, J.) ("[R]eporting delinquent payments while [plaintiff's] bankruptcy petition is pending" does not violate the FCRA.); *Harrold v. Experian Info. Sols., Inc.*, No. C 12-02987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) (Alsup, J.) ("[R]eports of delinquencies in payment while bankruptcy proceeding are [sic] still ongoing is not 'incomplete or inaccurate' information."); *Mortimer v. JP Morgan Chase Bank, N.A.*, No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) (Wilken, J.) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so.")[4] After an independent analysis, the Court concurs and addresses plaintiffs' two legal arguments below.

### b. "*Res Judicata*" Effect of Confirmed Bankruptcy Plan

First, plaintiffs' claims center on the proposition that "confirmation of a Chapter 13 plan constitutes a binding final judgment with respect to the terms of a Chapter 13 plan and modifies the rights of creditors relating to amounts owed and the terms of repayment." (Pl.'s Opp. to Wells Fargo Mot.,"Opp. to Wells Fargo Mot.," *King v. Experian Info. Sols.*, 4:16-cv-5711, Dkt. No. 74, at 5.) They argue that "[t]his modification occurs at confirmation and given the res judicata effect of confirmation this modification should be reflected on a consumer's credit report with respect to

---

[4] *See also Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017) ("The Court finds as a matter of law that reporting a delinquent debt during the pendency of a bankruptcy is not inaccurate or misleading, and thus these claims are dismissed with prejudice."); *Jaras*, 2016 WL 7337540, at *3 ("[I]t is not misleading or inaccurate to report delinquent debts during the pendency of a bankruptcy proceeding prior to the discharge of the debts."); *Keller*, 2017 WL 130285, at *8 ("[T]he Court rejects Plaintiff's argument that his credit report was misleading or inaccurate for reporting delinquent debt during the pendency of his Chapter 13 bankruptcy."); *Connors*, 2017 WL 168493, at *4 (same); *Adkins v. Experian Info. Sols., Inc.*, No. 5:16-cv-02150-EJD, 2016 WL 6841700, at *2 (N.D. Cal. Oct. 7, 2016) ("[T]he debt and its delinquent status still exist" while a bankruptcy proceeding is pending, and "it is not inaccurate or misleading to report that information."); *Biggs v. Experian Info. Sols., Inc.*, No. 5:16-cv-01507-EJD, 2016 WL 5235043, at *2 (N.D. Cal. Sept. 22, 2016) (same); *Blakeney v. Experian Info. Sols., Inc.*, No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal. Aug. 15, 2016) ("[C]ourts in this district have consistently held that it is not misleading or inaccurate to report delinquent debts that have *not* been discharged.").

balances and past due balances." (*Id.*) However, plaintiffs' argument overstates the effect of a Chapter 13 confirmation order.

Under 11 U.S.C. § 1327(a), a Chapter 13 confirmation order simultaneously fixes a debtor's obligations under the repayment plan and "imparts a restraint on creditors' ability to collect outside of the plan's terms." *Biggs v. Experian Info. Sols., Inc.*, No. 5:16-cv-01507-EJD, 2016 WL 5235043, at *3 (N.D. Cal. Sept. 22, 2016). If a debtor makes all the payments required by the Chapter 13 plan, the debtor is entitled to obtain a discharge, ultimately. For this reason, *res judicata* principles may indeed preclude debtors from collaterally attacking the plan terms that establish what a debtor must do to obtain a discharge. *See, e.g., In re Layo*, 460 F.3d 289, 293 (2d Cir. 2006) ("There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order.").

However, the mere confirmation of a Chapter 13 plan "does not 'absolve' or erase either the debt or the fact that payments are past due." *Biggs*, 2016 WL 5235043, at *3. For instance, if a debtor fails to comply with the plan, "the debtor's bankruptcy petition can be dismissed, in which case the debt will be owed as if no petition for bankruptcy was filed." *Doster*, 2017 WL 264401, at *5; *see also In re Blendheim*, 803 F.3d 477, 487 (9th Cir. 2015) ("[D]ismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding . . . ."). Thus, the legal status of a debt does not change until the debtor is discharged from bankruptcy. 11 U.S.C. § 1328; *Blakeney v. Experian Info. Sols., Inc.*, No. 15-CV-05544-LHK, 2016 WL 4270244, at *6 ("Plaintiff is not entitled to receive a discharge of debts covered under Plaintiff's Chapter 13 bankruptcy plan until Plaintiff has completed all payments provided for under the Chapter 13 bankruptcy plan."). To the extent a "confirmation order constitutes a final judgment," therefore, "it constitutes a final judgment only as to 'the manner in which the debtor will discharge his financial obligations,' not the legal validity of the debt." *Jaras v. Experian Info. Sols., Inc.*, No. 16-CV-

03336-LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016) (quoting *Elliott v. ITT Corp.*, 150 B.R. 36, 39 (N.D. Ill. 1992)).[5]

      c. Failure to Comply with Industry Standards

  Plaintiffs' second argument rests on the premise that, because the reported account information does not comply with the Metro 2 industry guidelines promulgated by the Consumer Data Industry Association, it violates the FCRA and CCRAA. This argument also does not persuade.

---

[5] Plaintiffs argue that *Jaras* was wrongly decided. First, plaintiffs attempt to draw a distinction between a "claim" and a "debt," but no such distinction exists. The Supreme Court has held that there is no difference between the definitions of "claim" and "debt" in the Bankruptcy Code: by defining "'debt' as a 'liability on a claim,'" Congress intended "that the meanings of 'debt' and 'claim' be coextensive." *Penn. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990) (quoting 11 U.S.C. § 101), *superseded by statute on other grounds*; *accord In re Davis*, 778 F.3d 809, 812 (9th Cir. 2015) (reaching same result); *In re Energy Co-op. Inc.*, 832 F.2d 997, 1001 (7th Cir. 1987) ("By defining a debt as a 'liability on a claim,' Congress gave debt the same broad meaning it gave claim.").

  Next, plaintiffs criticize *Jaras*'s reliance on *Elliott v. ITT Corp.*, 150 B.R. 36 (N.D. Ill. 1992), but that criticism is misplaced. In *Elliott*, a Chapter 13 plan was confirmed that required the debtor to repay $2,000 owed to a creditor. *Id*. at 38-39. The debtor subsequently filed a class action lawsuit against the creditor in state court challenging validity of the debt. *Id*. Like plaintiffs here, the creditor there argued that the complaint was barred by *res judicata* because the debt's validity was confirmed in the Chapter 13 bankruptcy plan. *Id*. The court held that *res judicata* did not bar the dispute because "underlying debts are not 'confirmed' in a Chapter 13 plan." *Id.* at 39. "Instead, a Chapter 13 plan confirms the manner in which the debtor will discharge his financial obligations." *Id*. Likewise here, confirmation of plaintiffs' Chapter 13 plans did not alter the legal status of the underlying debts.

  Finally, plaintiffs also cite *In re Luedtke*, No. 02-35082-SVK , 2008 WL 2952530 (Bankr. E.D. Wis. July 31, 2008), for the proposition that reporting the original amount of a loan, rather than the amount due under a confirmed bankruptcy plan, is inaccurate. However, plaintiffs confuse a creditor's obligations under the Bankruptcy Code with a creditor's obligations under the FCRA. Only the latter is at issue in this case. In *Luedtke*, the bankruptcy court found that the creditor's actions violated the bankruptcy confirmation order, not the FCRA, *id*. at *6, and granted the debtor's motion to require the creditor to "report the loan as modified by her Chapter 13 plan and . . . report as current payments the Debtor makes on the loan under her plan," *id.* at *1. Although the court noted that "it appears that the Debtor could proceed under the [FCRA]," *id.* at *5, this was dicta and not central to its holding. More importantly, *Luedtke* is also an outlier: it was decided in 2008 when "[v]ery few decisions address[ed] the issues created when creditors report to CRAs during the pendency of a Chapter 13 case." *Id.* at *2. At least one court has since refused to adopt *Luedtke*'s reasoning, *In re Jones*, No. 09-14499-BFK, 2011 WL 5025329, at *3 (E.D. Va. Oct. 21, 2011), as have courts in this District, *see* section B(1)(a), *supra*.

The Ninth Circuit has held that a credit entry can only be "'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). The Ninth Circuit based its holding in *Gorman*, in part, on a Fourth Circuit case, *Saunders*, which concluded that a "furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. at 1162-63 (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008)). In *Saunders*, a consumer alleged that he began to withhold payments on a loan after incurring late fees and penalties as a result of a creditor's own admitted accounting errors. *Id*. at 1162 (citing *Saunders*, 526 F.3d at 145-46). After being notified of the dispute, however, the creditor responded by updating the debt status to "uncollectible" and failed to indicate that the consumer disputed the validity of the underlying obligation. *Id*. (citing *Saunders*, 526 F.3d at 145-46). The Fourth Circuit held that, "[a]lthough the report may have been 'technically accurate' in the sense that it reflected the consumer's failure to make any payments on the loan . . . a consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility,' and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." *Id*. at 1163 (quoting *Saunders*, 526 F.3d at 148). By contrast, plaintiffs here do not dispute the accuracy of the underlying bankruptcy. Further, plaintiffs have also not alleged how the failure to comply with putative industry standards could be expected to mislead creditors and adversely affect credit decisions in their specific cases.

Plaintiffs' strongest argument to the contrary relies on *Nissou-Rabban v. Capital One Bank (USA), N.A.*'s interpretation of *Gorman*, which plaintiffs cite for the proposition that alleging violations of the Metro 2 standards can be sufficient to state a claim under the FCRA. No. 15cv1675 JLS (DHB), 2016 WL 4508241 (S.D. Cal. June 6, 2016). However, *Nissou-Rabban* is distinguishable on its facts. There, the court found that it could be so misleading for a furnisher to describe a debt that is the subject of a pending bankruptcy as "charged off"—that is, seriously

delinquent and uncollectable—without also specifying that the debt is the subject of a pending bankruptcy, as to render the reported information "incomplete or inaccurate" within the meaning of the FCRA. *Id*. at *4-5. The court did not hold that the failure to follow the Metro 2 guidelines alone is sufficient to support an FCRA claim. To the contrary, the court recognized that there was "persuasive authority suggesting that sufficiently pleading an FCRA claim based on failure to follow Metro 2 standards may be difficult[.]" *Id*. at *5. *Nissou-Rabban* further recognized that a plaintiff bears the burden of explaining why the "particular deviation" from the Metro 2 standards would be expected to "adversely affect credit decisions," as necessary to establish that the information was misleading. *Id.* at *5. There, the plaintiff met her burden by alleging that the failure to follow the Metro 2 format—which plaintiff alleged was the expectation—might cause those making credit decisions to draw unwarranted negative inferences.[6] *See id.* at *4-5.

The complaints here lack any such specific allegations,[7] and other courts in this District have distinguished *Nissou-Rabban* on this basis and rejected plaintiffs' argument accordingly. *See, e.g.*, *Doster*, 2017 WL 264401, at *5-6 (declining to follow *Nissou-Rabban*). Likewise, other courts in this District have consistently held that "accurately reporting a delinquent debt during the pendency of a bankruptcy is not rendered unlawful simply because a Plaintiff alleges that the reporting, though accurate, was inconsistent with industry standards." *Keller*, 2017 WL 130285, at

---

[6] Notably, the complaints here appear to actually allege the opposite: that creditors regularly fail to comply with the Metro 2 standards. *See, e.g.*, Compl., *Mamisay v. Experian Info. Sols.*, 4:16-cv-5684, Dkt. No. 1, at ¶ 7 ("In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.") If that is true, the Court fails to see how plaintiffs could allege that a lender looking at the credit report would misconstrue the information based on an expectation that furnishers comply with Metro 2 guidelines for this particular type of report. Further, the Court cannot deduce the import of industry guidelines, which do not appear to actually operate as industry guidelines.

[7] Some of the complaint allegations come closer to pleading with specificity particular deviations from industry standards that may be misleading and cause a lender to draw an unwarranted negative inference. *See, e.g., King v. Experian Info. Sols.*, 4:16-cv-5711, Dkt. No. 1, at ¶¶ 99-107. However, in light of the allegation that creditors also routinely ignore credit reporting industry standards—as noted above at n. 7, *supra*—the Court is left to guess at how and why these particular reports would be misleading in this context.

12

*7; *accord Doster*, 2017 WL 264401, at *5 (same); *Connors v. Experian Info. Sols., Inc.*, No. 16-CV-04663-LHK, 2017 WL 168493, at *4-5 (N.D. Cal. Jan. 17, 2017) (same); *Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017) ("Plaintiff's vague assertion that 'reporting a past due balance post confirmation does not comport with industry standards,' . . . is not enough to overcome this Court's consistent holding that as a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy."); *Sheridan v. FIA Card Servs., N.A.*, No. C13-01179 HRL, 2014 WL 587739, at *5 (N.D. Cal. Feb. 14, 2014) ("[T]his Court does not think that such reporting is materially misleading, notwithstanding any noncompliance with industry guidelines."); *Co v. JP Morgan Chase Bank*, No. 12-6560 PJH, 2013 WL 1788061, at *2 (N.D. Cal. Apr. 26, 2013) ("[P]laintiffs concede that [the Metro 2] guidelines are not binding on Chase, and that non-compliance with the guidelines does not constitute a violation of FCRA or CCRAA."); *Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB, 2013 WL 1663335, at *5-6 (N.D. Cal. Apr. 17, 2013) (alleging violation of Metro 2 guidelines did not make information "inaccurate or incomplete" without specifying how that "that deviation from those instructions constitutes an inaccurate or misleading statement"); *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) ("Defendant's alleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA."). Not surprisingly, myriad other courts also agree.[8]

---

[8] *See, e.g.*, *Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *4 n.5 (N.D. Ill. Aug. 19, 2016) ("Plaintiff's argument that Experian's reporting deviated from guidelines set by the Consumer Data Industry Association is beside the point, as these guidelines do not establish the standards for accuracy under the FCRA and cannot form the basis for FCRA liability."); *Jones v. Experian Info. Sols., Inc.*, No. 1:11-cv-826, 2012 WL 2905089, at *4-5 (E.D. Va. July 16, 2012) (holding that furnisher's failure to consult and adhere to the Consumer Data Industry Association guidelines for post-plan confirmation credit reporting was not *per se* unreasonable under the FCRA);  *In re Jones*, 2011 WL 5025329, at *3 ("With only one (unreported) decision employing this kind of a standard, no other decisions adopting the Resource Guide as a national standard, no endorsement of this standard by the FTC, and the Debtor's expert testimony stating that employment of the standard in the industry is a 'mixed bag,' the Court is unable to conclude that the Resource Guide constitutes a national, legally enforceable standard for the reporting of debts in a Chapter 13 case.").

### III. CONCLUSION

Based on the foregoing, defendants' motions to dismiss are **GRANTED.** Given the hundreds of complaints filed in the district, and the fact that plaintiffs have not yet been able to convince a single judge of the viability of their claim, the Court is inclined to dismiss with prejudice given that any amendment is likely futile. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (holding that a district court does not err in denying leave to amend where the amendment would be futile or where the amended complaint would be subject to dismissal). However, the Court will entertain briefing on whether the FCRA claim can be amended. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (holding that courts should generally permit leave to amend unless "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense").

Within seven days of the date of this order, plaintiffs shall file a response either conceding that the dismissal should be with prejudice (without waiving any appellate arguments) or providing a single proposed amended complaint and a brief explaining the legal reasons why amendment is not futile in light of this Court's order. In the event of the latter, defendants shall file a single consolidated response within seven days of the filing. Further, these six cases, as well as Case Numbers 17-416, 17-502, and 17-507, are temporarily stayed until the briefing outlined herein is complete so that the Court can issue a comprehensive scheduling order.

Given the dismissal of the only federal claim asserted in the complaints, the Court declines to exercise supplemental jurisdiction over plaintiffs' related CCRAA claims. They are **DISMISSED** for lack of jurisdiction. 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

**IT IS SO ORDERED.**

Dated: March 21, 2017

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE